Yes, good morning, your honors, and my co-counsel, Walter Shetley, on behalf of the plaintiff, Apawaiolaa, et al. There's four issues before this court. Number one, whether or not the trial court below erred in granting the government's motion to dismiss, whether or not the trial court below erred in denying our counter-motion for summary judgment, whether or not the geographical limitation amounts to a racial classification, searches of proxies for a racial classification that's prohibited by the equal protection component of the due process clause of the Fifth Amendment, and whether or not our action is time-barred by the statute of limitations. Now, the defendant, Apawaiolaa, Department of Interior, hereafter referred to as Interior, admits that Congress may not rely on constitutionally impermissible criteria in the exercise of their broad authority over Indian affairs. They admit that, they concede that. Interior also admits that the political question doctrine may not prevent judicial review of blatantly unconstitutional criteria. Let me ask you this question. If the Indian Reorganization Act actually, on its face, excluded all territories, including Hawaii, other than Alaska, in 1934, would that be an unconstitutional statute? It would not, Your Honor. I would say that the answer would be no. But Hawaii is no longer a territory. It is now a state. Okay. As this Court assumed in Price v. Hawaii, the IRA does apply to all states. It just does not apply to territories. Okay. Now, if they adopted the Act after Hawaii became a state, and the Act said that it will apply everywhere except to territories in Hawaii, everywhere except offshore, and that they would not consider the Pacific Islanders to be Indians, if that were the decision of Congress, would that Act be unconstitutional? Yes, it would be unconstitutional because the... It would not be a political question. In that particular scenario, in that hypothetical situation, Your Honor, it would be violating of the indigenous Native Hawaiians in the state of Hawaii who, under the Constitution of the United States, Congress acted pursuant to the Indian Commerce Clause. When they're dealing with indigenous groups, it would be a denial of the equal protection of the laws in violation of the Due Process Clause of the Fifth Amendment to the United States Constitution. But if they decide that any particular tribe doesn't qualify, any particular group doesn't qualify as a tribe, that's a political question. But if they exclude an entire area, that's not a political question. No, Your Honor, because as the Supreme Court stated in Rice v. Cayetano, the geographical limitation, for example, the definition of the state's invention of the definition of a Hawaiian, that geographical limitation to Hawaii amounted to a racial classification. And so the corollary to that is that when the Department of Interior uses the definition of indigenous groups with a geographical limitation, it is the Department of Interior that is now engaged in an unconstitutional, impermissible criteria because it does amount to a racial classification. And the term is, you know, Indian and indigenous groups, these are political terms, and therefore they're race neutral. For example, the Alaskan Natives are not ethnologically related to the lower 48 American Indians. The Pueblo Indians, who are very similar to the Native Hawaiians because we're a domestic dependent community, that was treated under the Hawaiian Homes Commission Act of 1920 when Congress set aside 208,000 acres for Native Hawaiians. That's something that the Department of Interior in their brief, I believe, mislead this Court because they say that there are no reservations for Native Hawaiians in Hawaii. And that's not true because in 1920, Congress set aside 208,000 acres. See, Interior states that Congress has delegated to the executive branch authority to manage and regulate Indian affairs. Interior admits that their power is not absolute and that Interior's authority is derivative of Congress's. So if Congress cannot rely on constitutionally impermissible criteria, neither can the Department of Interior. Yet that is precisely what Interior is doing by excluding indigenous Native Hawaiian and the scope of 25 CFR 83 acknowledgement process under the pretext of a geographical limitation. But the geographical limitation serves as a proxy for racial exclusion of the indigenous Native Hawaiians that are treated under the Hawaiian Homes Commission Act 1920. And this is constitutionally impermissible because Interior failed to show below that the exclusion of Native Hawaiians is narrowly tailored to vindicate a compelling governmental interest. All we are asking is that the indigenous Native Hawaiian groups be afforded the same opportunity to apply for acknowledgement as all the other indigenous people in the other 49 states. But you're saying more than that you want a right to apply. You're saying that the Secretary can't refuse because you're from Hawaii. That the Secretary can't refuse to grant tribal status on the basis that he won't grant it to Hawaiians. You see, here's what the Department of Interior has done. And they've done it throughout this entire case below. They've collapsed the distinction between acknowledgement and actual federal recognition, the determination of tribal status. They've collapsed that distinction in order to drag this narrow focus of just their regulations, 25 CFR 83. And that's what our cause of action was limited to. We're trying to drag it into the political question doctrine. And by saying that that determination of tribal status is a political question and therefore this court, as well as the court below, doesn't have jurisdiction. Interior's going to get up here and they're going to try to steer this court's attention to the direction of the political question doctrine. But that's not why we're here. We're here, we invoke the jurisdiction of this court to take a look at the 25 CFR 83 regulations, which appear to be neutral, but the geographical limitation we maintain amounts to unconstitutional racial discrimination against the indigenous Native Hawaiians. 25 CFR, the regulations they have talk about treating indigenous groups, okay, and they're excluding the indigenous groups of the Native Hawaiians who, for example, are treated under the Hawaiians Commission Act 1920. 1920, Congress set aside that line for us. And under U.S. versus Sandoval, it's up to Congress to determine to what extent, whether, and for how long they're going to treat a domestic dependent community. And like the Pueblos, who were not originally organized into tribes, the Native Hawaiians are a domestic dependent community, subject to the protection and care of Congress that originally set aside that federally created right under the Hawaiians Commission Act 1920. And again, in 1959, when Interior, in their brief, they completely forget to mention that they have oversight. Today, they have oversight over the Hawaiian Homes Commission Act of 1920. The diminishment of the benefits for Native Hawaiians treated under the Hawaiian Homes Commission Act 1920 cannot be done without the approval of Congress. Land exchanges has to be approved by the Department of Interior. They don't mention this. They completely mislead this Court, I maintain, because they don't point out the relationship between Congress and the domestic dependent community of Native Hawaiians. And all we're asking here today is to be able to go through the acknowledgement process. And, you know, the point of law, in this case, is for Native Hawaiians to be treated the same way the other indigenous groups throughout the United States are. To have a statute, to have a regulation by the Department of Interior saying, okay, everybody can apply except Native Hawaiians. Well, what good would it do you to apply unless you could compel them to grant status? Well, that would be up to the Department of Interior. They say themselves, in the record that we make below, the Department of Interior, in their report, from Mapa to Makai, the river of justice must flow freely. The Department of Interior admits that we do meet the criteria, that we do meet substantially the criteria for federal acknowledgement. They don't mention that in their brief. They completely did not tell the Court below about that report. We have to bring it to the Court's attention. Well, what I'm really asking is, is there any difference between the questions of whether you have a right to apply and whether they would have an obligation not to refuse to grant the status on the basis of Hawaiian origin? I mean, if they're saying don't apply because we're not going to grant it, they're doing you a favor. We don't want you to file applications that we're automatically going to deny. They're not doing us a favor. Only if they would then grant some, or they could be compelled to grant it. They could be. Under the political question doctrine, they would not be compelled. They could deny all of them? They could deny groups, indigenous groups from Hawaii, if they don't meet the criteria in 24 CFR 83.7. If they don't meet that criteria, the Department of Interior would be well within their rights to deny such applications. But we can't even apply. They prevent us from applying because of this geographical limitation, and they're doing that under the pretext that Congress hasn't treated native Hawaiian. Well, let me ask a different question. Maybe it's the same type of question that Judge Reinhart's interested in. Let's assume that the doors are open to you and you can apply, and Interior turns you down and says, well, we don't think you meet the criteria for various reasons. And you say, well, of course we think you meet the criteria. Do you think you have a legal remedy at that point, or is that a political question? Are courts barred from considering that on the basis of the political question doctrine? In other words, you've applied. You think you meet the criteria. DOI says no. Do you think you have a legal remedy? That's a good question. I would say that the political doctrine at that point would prevent a legal remedy. At that point, I would say it. I could be wrong. My esteemed counsel has handed me a note right here, and we could appeal. Well, it sounds like you need to think about that question a little bit more. Yes, we could appeal, but that's not the question that's before this court today. No, but I guess it is in a sense. All we're asking for is the equal treatment of the indigenous Native Hawaiians to be able to apply for federal acknowledgment. Interior is going to get up here. They've wasted a lot of ink and a lot of time. They're going to try to take up this court's time talking about the political question doctrine, and they're not going to tell you about the Hawaiians Commission Act of 1920 like they did below. Some people in the Department of Interior tend to want to abandon the guardian-ward relationship that exists between Congress and the Native Hawaiians. Anyway, the trial court below erred when they granted the government's motion to dismiss because whether or not Native Hawaiians can be treated as indigenous groups, as tribes, that's a factual question, and the court was supposed to look at the allegations in our complaint as being true. The court below also erred because after citing the political question doctrine and saying it's up to Congress to determine whether or not Native Hawaiians have been treated like tribes, the court turned right around in the very next sentence and said that Native Hawaiians have been treated to a government-to-government relationship by Congress. The court below erred because it violated the political question doctrine by answering the question in the negative, completely ignoring the U.S. v. Sandoval case that talks about the Pueblos. That's the point I want to make today is that the Pueblos were never originally treated as tribes. They're a domestic-dependent community. So also the Native Hawaiians who Congress sought to treat under the Hawaiian Women's Commission Act in my complaint. I'm going to reserve the balance of my time for rebuttals. Thank you. Good morning, Your Honor. My name is Ellen Durkee. I represent the Department of the Interior. I am indeed going to waste this court's time by talking about the political question doctrine. The plaintiff's amended complaint in this case challenged on equal protection grounds the exclusion of Hawaii from Interior's regulation governing the process for acknowledging Indian groups with a government-to-government relationship with the United States. The district court correctly held that plaintiff's complaint should be dismissed because it poses a non-justiciable political issue. The district court also correctly held in the alternative that Interior's regulations do not violate equal protection. The district court judgment can be affirmed on both those bases and for a third reason that the case will challenge the regulations barred by the statute of limitations. Before you plunge in, let me ask you a hypothetical question. Let's take my home state of Montana. We have seven reservations, 11 tribes. Do you think that DOI promulgated regulations saying every state in the Union may apply, tribes from every state in the Union except Montana can apply for recognition. Do you think that tribes in Montana would be without a remedy based on the political question doctrine? Yes, if I may enlarge on that. If Interior concluded that Congress had never intended or had never acted to enter a government-to-government relationship with Montana tribes because of differences in history or whatever reasons, and that was the reason that they excluded it, yes, that would be a political question. When Interior... Go ahead. Well, let me stop you there, though. You changed a bit of the assumption. Let's just say that the record is bare. All we have is the regulation that says Montana, those of you from Montana cannot apply for tribal status. Do you think Montana would have a remedy? The tribes of Montana? No. But it goes back to what Congress has done. I guess I do have to make the hypothesis that... Well, doesn't that answer the question, though? Isn't that the basis of review, is that we finally have to look at what Congress intended? Yes, you do have to look at... So, of course we have... I mean, it seems to me that we have jurisdiction, despite the political question, to determine what Congress said. If Congress had made a judgment based on and for reasons within the political question doctrine, then that's amenable. If it has not, then the court has jurisdiction, as you say. Right. The political question... Let's say somebody... Just to answer the contours of my question. I mean, if someone in Interior said, you know, I've been to Montana, I don't like it. I just don't like that state. And so we're just going to... We're not going to do this. That's certainly what you said in the question. In court. You're asking the answer? Yes. Okay. The... When Interior put together these acknowledgment regulations, it does not assume the power to create government-to-government relationship with Indian tribes. The power comes from Congress. If Congress had, in your Montana example, passed a statute that made it quite clear that Congress intended to have a government-to-government relationship with Montana tribes, and someone at Interior said, well, I don't like Montana, and I'm not going to put them on, you know, I'm just not going to take their application, then they would have a remedy. And the remedy in that case would be that Interior is not following the statutory directives of Congress. I do agree with what you were saying in that the political question doctrine doesn't mean that a court is powerless to decide anything. I do think that the nub of the question here that the court can decide is, has Congress earnestly decided that it wants to be in a government-to-government relationship with Native Hawaiians? Interior has interpreted the statutes to say, no, it has not, and Interior does not have the power in and of itself to go out and create relationships. If we disagree with Interior's interpretation of what Congress intended, where does that leave us? If you agree, if you say that Congress did intend to be in a government-to-government relationship with Native Hawaiians, treating them, you know, as thoroughly recognized tribes, then I think where that leaves you is that Interior's explanation of why they passed this regulation would be arbitrary and capricious, and so they, yes, Interior's defense of the regulation would fall by the wayside. So I do think the court has to decide that. That is what the district court decided, by the way. What the political question is, if you reach the conclusion that Congress has failed to make this recognition, failed to choose for the United States to be in a government-to-government relationship with Native Hawaiians, the political question doctrine prevents the court from going the extra step of saying, well, Congress has enacted, but we're going to decide whether we think that would be a good idea or not. That's where the political question doctrine comes into play. The political question doctrine also prevents the court from basically saying, if Congress has failed to do this, that for some reason that's impermissible. Congress has absolute authority to decide which of these groups that it wants to be in a government-to-government relationship with. If Congress hasn't spoken definitively, where does that leave us? If Congress has not spoken definitively, and that is Interior's position, then it leaves you with that Interior's regulation is valid. It leaves you with recognizing that it's going to be Congress that is going to have to take the step of entering into a government-to-government relationship with Native Hawaiians. Because that is the point of the political question doctrine vis-a-vis tribes. It is a congressional decision. It is a political decision. It is not a fundamental right under the Constitution to be recognized in a government-to-government relationship as an Indian tribe. And it is not beyond Congress's power to treat Indian groups differently. No. The statute here doesn't say what the regulation says, though. I mean, it doesn't say we're going to exclude Hawaiians. You have to draw that inference from patchwork of a lot of different statutes in congressional action, correct? I mean, the statute doesn't say that it doesn't mirror the regulation does not mirror statutory language, correct? There is no statute that I can point you to that prohibits it. It says Congress says we absolutely don't want it. But the onus is on plaintiffs to point you to something where Congress has shown it has entered into this government-to-government relationship. And if I may turn for a minute, in the district court, the only statutes that they identified as doing that were the Indian Reorganization Act and ICEA. And counsel just got up and said, I haven't talked about the Hawaiian Homes Act. That was never mentioned in the district court. It was not mentioned in their opening briefs. I would have no reason, because that wasn't the basis of their claim that Congress had done this. But if you're prepared to discuss it, why don't you tell us what your opinion is on the effect of that statute? Quite frankly, I didn't prepare specifically for that. But the position is that that does not cover, does not create a government-to-government relationship or a trust relationship. And I would feel better if I could supplemental brief that, because that's not an area I'm an expert in. But what that did is set aside certain lands. But in the Admissions Act, all of that authority has been delegated to the state. What the two statutes, the 1920 Act and then the Admissions Act, do illustrate is that when it came to Hawaii, Congress didn't follow the road map that it followed with Indian tribes in the United States. It did something very different vis-a-vis indigenous people in Hawaii. And that's certainly within Congress's power to do that. I mean, if you look at the IRA itself, you know, it basically excludes all Oklahoma tribes. It did different things with Oklahoma as well. And so there's the position of the Department is clear that the Hawaiian Homes Act didn't create that relationship. And I feel better if I could go, you know, through different sections, but I'm quite confident that it's not. One question is, is that the interpretation of the Act is not a political question. If Interior decides that the Act did not include Hawaii, that would be something the Court should be examining. It would be a statutory interpretation question with, of course, the usual statutory interpretation tools, which is deference to Interior's interpretation of these Acts, because it is the agency. Right. In particular, the Indian Reorganization Act has consistently been interpreted as not applying to the state of Hawaii. The purpose of the Act has nothing to do with what's going on in Hawaii. Consistently been interpreted by courts or by the Department? By the Department. And what plaintiffs had focused on in that Act was the definition of Indians, and what I would submit is that the important part of that Act is the definition of tribes. Because the point to keep in mind is that whether or not Native Hawaiians meet the definition of Indians in that Act, or whether or not Native Hawaiians could show some of the criteria under Part 83 of the Regulations on Acknowledgement, the fact of the matter is Interior has interpreted Congress's position as failing to affirmatively accord them government relationship. It doesn't have that same position vis-à-vis American tribes, Indian tribes in the continental United States. It's fairly apparent from the web of treaties and statutes that Congress has, and the way they've been interpreted by the courts, that Congress has entered into a government-to-government relationship with those tribes. One other thing I'd like to mention also is that counsel said that we failed to mention the report that was done between Interior and the Department of Justice saying that Native Hawaiians meet the criteria. I don't know if the report says that exactly, but I do know that the report says that if Native Hawaiians are to give federal recognition, it's got to come from Congress. That report says they don't have that under the current statutory scheme. The other point is that— I suppose that when you talk about Interior, an interpretation that the statute does not apply to Hawaiian natives, whether because the statute's sound or— When Congress made a determination or left it open in Interior, either way, I suppose, there would be a question of constitutionality that could be raised as to that statute or regulation. Well, I think that—I guess I do want to point to this really congressional decision here, and that's where Interior's resting on. The question is, can you look at whether it's constitutional for Congress to— Exclude what? Right. The point is, first of all, as we said, it's not affirmative exclusions you're necessarily looking at. It's a failure to include. And I would say that, no, that is the political question. Congress doesn't have a constitutional obligation to recognize every Indian group as a tribe. Well, that's the answer to the— Not every Indian group, but do they have the power or the authority under the Constitution to not recognize one group based on their racial characteristics? I think they probably do, but I would emphasize here that's not what's going on here. Why not? Because just as—I mean, Congress has terminated certain Indian tribes, and I suppose you could look at that and say because Indian tribes are ordinarily defined by their ancestry that Congress has terminated them based on racial class. I mean, that's essentially what they're saying here. The reason, though, that there are differences in the way different tribes are treated and why some have government-to-government relationships and some don't generally has to do with their unique history and how they've been dealt with through history and how Congress chooses to act for them. I don't think that the Equal Protection Clause allows courts to say Congress has an obligation to go out and treat certain Indian groups as tribes. When we quoted from Supreme Court case law that said there is— that Congress can't employ constitutionally impermissible criteria, what that court was talking about was that Congress doesn't have the constitutional authority under the Indian Commerce Clause to say that a group of people of Irish ancestry is an Indian tribe. In other words, they can't use that authority to bootleg into groups that don't have any kind of— in anybody's conception of what an Indian would be. And that is the extent to which the Supreme Court has recognized constitutional authority to question Congress's political judgment as to which sovereign person— You asked me, though, in the patchwork of things, when you look at the history of the tribal— and I grant that how Hawaii is developed is different. But in reading all of the statutes, there's nothing that excludes a particular state. You have to—negative inference of what Congress has done over the passage of time. And they're very different kinds of groups. The Native American groups in Alaska are far different from the Native American in Montana and Oklahoma. And the bands of Indians in California are entirely different groups as well. But, of course, in the case of Alaska, Your Honor, Congress expressly went out and made them—recognized them as Indian tribes. I think there would be a question there whether if Congress hadn't done that, whether Interior could have done it. One of the things I'd like to emphasize is the last point— two points on the political question, Dr. Moore. One is that the Supreme Court in Rice said that it would pose a serious constitutional question whether Congress has the authority to treat Native Hawaiian groups as recognizing the interests with a government-to-government relationship. Given that that raises a serious and difficult constitutional question, it should be Congress that makes that call and not the Department of the Interior. And, therefore, it's reasonable for Interior to have said, we're going to wait until we get this explicit instruction from Congress. Secondly, the thing to remember about the acknowledgment regulations is that the underlying premise is that a tribe is a political, not a racial, classification. A tribe is not simply a collection of people with Indian ancestry. But the focus when they're looking at whether something is a tribe and the focus of the definition of a tribe under the IRA or other statute, is the core requirement is that there be an existence of a community exercising political or authority with retained political power. And so I think to say that Native Hawaiian groups, that this is necessarily a racial classification, distinct from the usual analysis of Indian groups as a political classification, really isn't a true distinction here. Because what they want to be is a tribe. And so we're going to, and what they're comparing themselves to are other Indian groups that are tribes.  This is another jurisdictional barrier to their claim here. And they have never answered that issue in this court. We raised it in our briefing. They chose not to file a reply brief on this. But, you know. If you have an unconstitutional statute or regulation, do you think it becomes constitutional or beyond challenge with the passage of time? Yes. If you're suing under the APA, I think this court is so held in Wind River. On the constitutional challenge? I believe that Wind River says statutory or constitutional challenge. What if you're not suing under the APA? Well, you know, it's hard for me to say I know every possible way. But the only thing, but I do know here what they're doing is challenging regulation and they're challenging the APA. And you can't have a continuing violation theory under the APA. It's a mutually exclusive theory. You have to have a final agency action. It's to find a time when you bring a facial challenge. Now, I think that if you had a regulation in the Department of Education that said, you know, we will not fund schools unless they're 50-50 black and white, and that had been passed before the Supreme Court adopted some of its recent decisions, it would be too late to challenge it. And that's the way it would be from now on, no matter what the law became. I don't think you could do a facial challenge under the APA. I think there may be theories as to how you could do it. I'm a little hesitant to jump in. It must be an as-applied challenge. Yes, exactly. I mean, most racial discrimination cases are as-applied challenges, Your Honor, and most of them are not against the federal government. Most of them are 1983 action, 1981 actions, or, you know, under particular statutes. And I think most, you know, I hate to generalize because I certainly don't know all discrimination cases, but it is true that most of them are as-applied challenges. And under the APA, I recognize that actions don't accrue necessarily with the passage of a regulation if a plaintiff couldn't successfully maintain the suit at that point. In other words, if there's something that needs to happen subsequent for the plaintiff then to have standing or to have it be applied, but that isn't this case. When this regulation was passed in 1978, it was apparent on its face that Native Hawaiians couldn't apply. Nothing's changed. They haven't brought an applied challenge. And, you know, so they've been on notice. And it's, you know, probably their choice to bring a facial challenge. Well, so the futility doctrine of applying or all they got to do, it seems to me, is to tender an application. And you would reject it and they would have not. Well, you're right. And I think that, yeah. And you know that you'd reject it. Right. And it would be a rejection. It would be a rejection on the grounds that Native Hawaiians are not eligible for this government-to-government relationship in the absence of congressional legislation. Right. And so it really is neither here nor there whether they meet the Part 83 criteria. I guess I'd say that in this case that's why, you know, no matter how it is, it's going to have to be a facial challenge. I mean, there are. . . Right, but then it's not barred by the statute of limitations. We've held another context where similar circumstances where it would be futile application occur that the statute of limitations doesn't bar because, in effect, the way the facial challenge would have to. . . In order to have an as-applied challenge, they would have to undertake a completely futile action. Your Honor, with all due respect. . . No, I. . . I think. . . My understanding was that that is how you get around the exhaustion requirements, but I didn't know it was a way to get around the statute of limitations under the APA. Yeah. And finally, I just. . . Actually, I have eight minutes, so let me take the full minimum of my time. On the equal protection issue, I think that one thing that I just want to mention is that this case isn't. . . You know, they say this is simply a corollary of Rice. First of all, Rice was looking at the voting scheme, the fundamental right. It was comparing non-Hawaiians to Hawaiians. What they're comparing here are Indian groups, and are trying to compare Native American groups to Native Hawaiian groups, and I think that this falls under sort of the rational basis because when courts have looked at equal protection challenges where tribes have complained, we don't get the same rights for them. Some states have been excluded from the Indian Gaming Act, and they've sued under equal protection. Of course, that's a rational basis challenge, and Congress can treat tribes differently. They don't have to give Indian groups all the same privileges. So if the Court has no more questions, I'll stop there. Thank you. First, when we apply for acknowledgment at the Department of Interior, the Department of Interior decides to deny the application. We have a record. We have a factual record that we can appeal on. But right now, the regulations prevent us from applying, and for that same reason, that's why the statute of limitations doesn't run, because we're prevented from applying. If the government's right, they don't have to give, or they won't give, recognition to any group from Hawaii, it doesn't make a lot of sense to say, okay, you can apply. It seems you have to know the answer to that question, whether they have the right to say no recognition for any Hawaiian groups. The department is without authority to recognize. All they can merely do is acknowledge an existing government-to-government or guardian-ward relationship like the Sandoval case, Pueblos. So then they say, if you apply, we wouldn't acknowledge, because we don't acknowledge groups from Hawaii. I mean, that's their position. In order to determine whether you should be able to apply, don't you have to be able to determine whether they can maintain their basic position? That's not our case. Our case is we ought to have the right to apply. Whether they're going to consider it or not. We maintain, if a factual record would have been able to have been developed below, is that we would meet the criteria. We do meet the criteria, and the Department of Interior report from Alpha to Makai at the River of Justice, they were correct in their findings that we do meet the criteria. They were simply wrong. That was a political call by personnel within the Interior and Justice who decided to punt and send it back to Congress. But the findings within the report say that we do substantially comply with the criteria, and we maintain that had we been given the opportunity by the court below, prior to it committing reversible error in dismissing the complaint, we would have been able to make that record. But at the end of the day of all this, aren't we just interpreting what Congress did? If Congress has, in our interpretation, chosen not to exclude Hawaii, then the actions of Interior are not permissible. If, on the other hand, we think that the Department of Interior is correct in its interpretation of what Congress has done over the years, we agree with that interpretation, then it seems to me that's a political question. So do you agree with that? If that were the case, it would be a political question. Well, what's your best case that Congress has chosen to include applications from Hawaiian groups who claim Native American tribal status? We all go back to the Constitution, Article I, Section 8, Clause 3, when the Constitution is talking about regulating Indian tribes, commerce with Indian tribes, that the term Indian has been disproved by Interior correctly to mean indigenous, where the error is when they start saying it's indigenous only to 49 states except Hawaii. I mean, you know, that distinction amounts to an unconstitutional racial discrimination against Native Hawaiians. Government has failed to show that it's narrowly tailored to vindicate a compelling governmental interest. They can't show why. And they failed to show why that discrimination was narrowly tailored to vindicate a compelling governmental interest as required by Adirondack Constructors. And the Rice v. Cayetano case, the Supreme Court ruled that or held that the classification of Native Hawaiians was a racial classification. Let me ask you a question. Suppose next year Congress decided to grant statehood to Puerto Rico. Would the Constitution require Congress to recognize Puerto Ricans as tribes? No. Why not? Because that would fall within the political question, Doctor. That would be up to Congress to decide. But that's not the case here. Congress has already decided since 1920 to treat Native Hawaiians under the Hawaiians commission. Ah, that's becoming a little clearer to me, I think. You're saying that the statute does cover Hawaii, but that if Congress had decided not to, it wouldn't be in the Constitution. You would be correct. If Congress had explicitly stated in the statute that when Hawaii becomes a state, it's not going to apply to Hawaii, then they could do that as a law exercise under the political question doctrine and under their powers under the Indian Commerce Clause. They could do that, but that's not what Congress did. We have a statute in the IRA that says it applies to all states except territories. Hawaii is no longer a territory, it's a state. And this court, this Ninth Circuit court, assumed that the IRA did apply to Hawaii. What we have here is blatant, unconstitutional racial discrimination. It's not exactly that simple, because if many Indian tribes within the continental United States have been quite adamant about avoiding a racial classification for this reason, it's that there are many preferences, there are many types of activities that they undertake that would not be permissible. In other words, you could not discriminate against non-whites if it's determined to be a racial classification. If it's a political classification, then discrimination is proper. So in a number of cases we've heard previously, Native American tribes in the continental United States have said, no, you cannot view this as a racial classification, because it's a political classification, because it's to their benefit. So the questions aren't so clear-cut in terms of how this falls. This is true, but what we do have here is that since 1920, Congress acted on behalf of Native Americans. Well, I guess it all comes down to the 1920 Hawaiian Homes Commission Act, is what you're saying, at the end of the day. I think it assists any fact-finder that there exists a... Government-government relationship. I would say a guardian-ward relationship at this time, like the Pueblos, or like the ranch areas out in California and the Alaskan Native villages. They weren't quite tribes, but they've been able to use the device of the Indian Reorganization Act of 1934 to reorganize into governmental units. But our case is simply narrowly focused on the regulations and being able to apply so that we can make a record if the Department of the Interior arbitrarily, preciously denies our petition because they just don't like Native Hawaiians. Right. Well, I gather, though, the only thing you have to offer, affirmatively, is the Hawaiian Homes Commission Act of 1920 in terms of evidence that Congress has intended to deal with the indigenous population of Hawaii in a special manner. Anything else? We have the Admissions Act, Section 5F. It adds another 1.4 million acres that's in trust that the Department of Justice has the authority to bring a breach of trust action. We have something like over 150 statutes that Congress has authorized to treat Native Hawaiians. And Congress can make distinctions between different blood clans of Native Hawaiians, and they have. But as far as the Hawaiian Homes Commission Act of 1920, that's the best evidence that we have. Congress in 1920, acting in the field of the national interest, treating an indigenous group, and like we state below, Indians is a political term and shouldn't be used by the Department of the Interior to mean to have a racial color to the group. And that's what they're doing by saying, everybody can apply except you out there in Hawaii. I mean, they can dress it up any way they want to, but the effect is that it amounts to an unconstitutional racial discrimination. And in the absence of showing a compelling governmental interest that's narrowly tailored, you know, a narrowly tailored remedy to vindicate a compelling governmental interest, they lose the corporeal error in denying our counter motion for summary judgment and granting their motion to dismiss. We should have. We've taken you way over time, and I think we've exhausted the issue for today at least. So thank you both very much. It's an interesting problem, certainly, and you've both given us a lot of help. Thank you. Thank you very much.  Thank you. Thank you. Thank you.
judges: Browning, Reinhardt, Thomas